UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LUMBERMEN'S MUTUAL CASUALTY CO., | : | CASE NO. C-1-02-091 |
| | : | (Judge Sandra S. Beckwith) |
| Plaintiff, | : | (Mag. Judge Timothy S. Hogan) |
| v. | : | |
| THE VICTOR CORPORATION | : | |
| Defendant. | : | |
| | : | |

DEFENDANT VICTOR CORPORATION'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR ENTRY OF JUDGMENT AND STAY

I.    Introduction

This Court should overrule the Plaintiff's Motion for Entry of Judgment and to Stay the Trial for three reasons. First, there has been no decision by the Court that could be certified as a final judgment under Civil Rule 54(b). At this point, the Court has merely decided that Lumbermen's Mutual breached the insurance contract as a matter of law, but there has been no judgment or decision on damages or the Defendant's companion bad faith claim. The use of the Rule 54(b) certification in this case, where only one liability issue has been decided, would literally open the proverbial "flood gates" to piecemeal appeal in all cases pending before this Court.

Secondly, all of the relevant Rule 54(B) factors weigh *against* the entry of a judgment in this case, as this piecemeal appeal would inevitably prolong the litigation, causing further injury and damage to the Victor Corporation due to delay, and ultimately leave the Victor Corporation

STRAUSS & TROY
A Legal Professional Association

without a remedy, as Lumbermen's Mutual careens towards financial crisis. <u>Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.</u> (C.A.6 1986), 807 F.2d 1279, 1283. Unlike the cases involving merely the duty to defend (which are relied upon by the Plaintiff), this case involves a first-party breach of contract and bad faith claim, and ***all*** of the concerns raised by the <u>Corrosioneering</u> court are present in this case, including substantial delays in the administration of justice, solvency issues relating to the defending party, and the expense of piecemeal litigation to the claimant.

Finally, the granting of the Plaintiff's motion would ***completely undermine*** the purpose of Rule 54(b) certification and, in the process, confer an unfair and unreasonable procedural advantage to an insurance company in all first-party claims. The purpose of 54(b) is to "strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." <u>Revco D.S., Inc. v. Gov't. Employees Ins. Co.</u> (N.D. Ohio 1991), 791 F.Supp. 1254, 1277. In the case at bar, the insured is a small corporation that sustained a quarter-million dollar loss, which was covered by the Plaintiff's insurance policy as a matter of law. <u>See</u> ORDER (Aug. 22, 2003). Almost immediately upon notice of this loss, ***now more than two years ago***, Lumbermen's Mutual engaged in a pattern of deceit and delay, admittedly lying to the Victor Corporation regarding the status of this claim and waiting nearly six months to deny this claim in a letter purposefully back-dated to conceal the inaction and obtain a procedural advantage in this case (i.e., the Victor Corporation received the denial and the complaint in this case at the same time). More recently, Lumbermen's Mutual has openly admitted to this Court that it is confronted with a dire financial crisis, which could impact its ability to cover the underlying loss.

In the case at bar, the Plaintiff's motion would weight the scale *so heavily* in favor of Lumbermen's Mutual, that the scale itself would collapse upon the floor. In essence, the motion would create more delays of months and years, as the case works its way through the appeals process. The certification would impose additional and overwhelming litigation costs, expenses, and attorney's fees upon the Victor Corporation, as it continued with litigation through the appeal, trial, and subsequent appeal. In the interim, the Victor Corporation would continue to sustain the damages associated with financing this substantial loss. More importantly, the granting of this motion would allow the insurance company to simply avoid a **substantial** and **probable** jury award of damages (including punitive damages, prejudgment interest, and attorney's fees), while it continues to delay and avoid its legal and contractual obligations. Conversely, no benefit of any kind would be conferred upon the Victor Corporation, as the Victor Corporation has already incurred the expenses and attorney's fees necessary to prepare for trial. As a result, this Court should overrule the Plaintiff's motion and allow the Defendant to present its claims to the jury.

A.   **There is No Judgment to Make "Final" in this Case**

As discussed in more detail in the Victor's Memorandum in Opposition, there is no judgment by the Court that Plaintiff can seek certification of pursuant to Rule 54(b). Without a determination as to damages, which the Court did not make in its August 22, 2003 Order, there is no judgment to make final. See Williams v. Kentucky (C.A.6 1994), 24 F.3d 1526, 1542 ("Because the district court's grant of partial summary judgment left the awarding of relief to be resolved, it was not a 'final decision' within the meaning of 28 U.S.C. Section 1291, and therefore was not certifiable under Rule 54(b)."); Scarbrough v. Perez (C.A.6 1989), 870 F.2d

1079, 1082 ("The rule against piecemeal appeals would seem, on the face of things, to counsel against entertaining an appeal before determination of the dollar amount of the corporation's liability."). In the absence of a final decision or a "judgment" to make final, there is no basis for the 54(b) certification. Like all other cases involving *partial* summary judgment on one legal issue, the insurance company must wait until after the trial and resulting judgment before seeking any appeal.

B.   **The *Corrosioneering* Factors Weigh Against the Certification**

Even if there was a judgment to make "final," however, the factors used to make this determination under Rule 54 (b) *strongly weigh* against allowing Plaintiff to continue to prolong this litigation through a piecemeal appeal process. Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc. (C.A.6 1986), 807 F.2d 1279, 1283. Under the Corrosioneering factors, there is an obvious and undeniable relationship between providing coverage and Lumbermen's Mutual's actions (and inaction) in denying coverage under the Policy in bad faith. As noted by the Sixth Circuit Court of Appeals, there is an undeniable strong relationship between breach of insurance agreement claims and bad faith claims. See Hamilton v. State Farm Fire & Casualty Co. (C.A.6 1997), 1997 U.S. App. Lexis 30065, *6 (Copy attached hereto as Exhibit A) (judgment for breach of insurance agreement and claims for breach of duty of good faith and fair dealing arose from the same set of facts); Porn v. National Grange Mutual Ins. Co. (C.A.1 1996), 93 F.3d 31, 34 ("[B]oth the bad faith claim and the contract claim derive from the same occurrence: [Insurance Company's] refusal to pay Porn the proceeds of his [policy].").

In National Metalcrafters v. McNeil, the Seventh Circuit Court of Appeals stated that "a judgment disposing of one of several claims is sufficient to be appealable immediately under Rule 54(b) only if the claims do not have a significant factual overlap." 784 F.2d 817, 821. In

4

the case at bar, the breach of contract (i.e., denying a claim covered by the insurance contract) and the bad faith claim (i.e., taking actions against an insured with no reasonable justification therefore) directly and substantially "overlap," as the breach and the bad faith are legal and factually intertwined.

In addition, the factors set forth in <u>Corrosioneering</u> – including delay, solvency, and expense – also require the Plaintiff's motion to be overruled. The Victor Corporation has bore this crippling loss for more than two years, notwithstanding the Plaintiff's legal and contractual obligations. If granted, the Plaintiff would further delay performance through the appeals process, the jury trial on the breach of contract damages and bad faith claims, and then yet *another* appeal from the resulting judgment. Yet, the overwhelming expense and delay imposed upon the Victor Corporation will likely be dwafed by the underlying solvency concerns expressed by Lumbermen's Mutual in chambers. The piecemeal appeals process and delay of trial will effectively deny any justice to the Victor Corporation, ultimately leaving the Victor Corporation without any remedy or redress for hundred of thousands of dollars in losses caused by Lumbermen's Mutual's breach of contract and bad faith. It is not "just" to permit Plaintiff to appeal a *liability* determination, and require Victor to continue to incur expenses and attorney's fees and additional delays, as Lumbermen's Mutual continues to fall into financial ruin. The <u>Corrosioneering</u> factors required this Court to overrule the Plaintiff's Motion.

### C.  The Plaintiff's "Duty to Defend" Caselaw Does Not Apply in First-Party Breach of Contract and Bad Faith Claims

Finally, the cases relied upon by the Plaintiff do not support the application of Rule 54(b) to the decision made by the Court in this case, as all of these cases involve a first-party claim for defense and indemnification in an unrelated lawsuit. See <u>Taco Bell Corp. v. Continental</u>

5

Casualty Co. (N.D. Ill., June 11, 2003), Case No. 01 C 0438, 2003 U.S. Dist. Lexis 9986; Continental Ins. Co. v. Del Astra Indus., Inc. (N.D. Cal. 1993), 811 F. Supp. 1410; Prime TV, LLC v. Travelers Ins. Co. (M.D. N.C., April 9, 2003), Case No. 1:01CV00952, 2003 U.S. Dist. Lexis 6128. All of these cases involve the appeal of a judgment determining the "duty to defend" separate and apart from the underlying loss and litigation, rather than a first-party claim for coverage of a casualty loss and the related bad faith claim for the unjustified denial of the claim. See also Revco D.S., Inc. v. Gov't. Employees Ins. Co. (N.D. Ohio 1991), 791 F.Supp. 1254.

In Revco, Plaintiff sued GEICO and First State seeking a declaration that, GEICO and First State would provide drop down insurance coverage and a duty to defend Plaintiff in separate litigation brought by OJF and its intervening insurers, which included New England, for damages caused from the drug E-Ferol. Id. at 1256. GEICO counterclaimed to recover the settlement fees it had forwarded to Plaintiff. Id. at 1257. Plaintiff also brought claims against New England for bad faith for intervening in a separate E-Ferol litigation against Plaintiff, despite, *inter alia*, providing insurance to Plaintiff. Id. at 1278.

After the Court granted summary judgment against Plaintiff on its claims against GEICO and First State and for GEICO on its counterclaim, it permitted this ruling to be certified under Rule 54(b) while Plaintiff's claims against New England were pending Id. Central to this determination was the Court finding little relationship between the Plaintiff's claims for coverage against GEICO and First State and Plaintiff's claims for bad faith against New England. Id. at 1279. The court stated "the claims against GEICO and First State involve completely different issues that the claims against New England." Id. at 1279, 1280. This is likely because of the separate agreements of insurance between Plaintiff and the parties that provided the backdrop for

STRAUSS & TROY
A Legal Professional Association

the respective claims. Revco is entirely different from the present dispute: Here there is one insurer and not multiple insuring parties, there is no question regarding an insurer's duty to defend, the agreement creating the coverage dispute is the *same source* as the bad faith claim, and Plaintiff, and not the insured party, is moving for certification. Revco, even read at its broadest, does not hold that a liability determination may be made a judgment pursuant to Rule 54(b) while a bad faith claim remains pending against the same insurer.

## CONCLUSION

As Revco states, Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." Id. at 1277 (quotation omitted). Allowing Plaintiff to appeal a judgment as to liability would not strike a balance and serve the needs of the parties, but would allow Plaintiff to continue in further dilatory tactics that deprive Victor of monies rightfully owed under the Policy. As demonstrated by this Supplemental Memorandum, as well as the Memorandum in Opposition, there are many just reasons for delaying Plaintiff's appeal, and its Emergency Motion for Judgment Pursuant to Rule 54(b) must be denied.

Respectfully submitted,

_____
August T. Janszen (0062394)
STRAUSS & TROY, L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
atjanszen@strausstroy.com
(513) 621-2120 (telephone)
(513) 241-8259 (facsimile)
Attorney for Defendant,
V.Y., Inc. dba The Victor Corporation

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copies of the foregoing Memorandum in Opposition was served upon the Attorneys for Lumbermen's Mutual Casualty Company, **Thomas Gruber, Esq.**, McCASLIN, IMBUS & McCASLIN, L.P.A., 632 Vine Street, Suite 900, Cincinnati, OH 45202-2442, and **Howard L. Lieber, Esq.**, HORVATH & LIEBER, P.C., 10 South LaSalle Street, Suite 1400, Chicago, IL 60603 via facsimile and ordinary U.S. Mail, first class postage prepaid, on this the 10th day of September, 2003.

                                              August T. Janszen (0062394)

77920.223 / 409560.1

**STRAUSS & TROY**
A Legal Professional Association